[Civil No. 4484. Filed March 15, 1943.]

[135 Pac. (2d) 218.]

WILLIAM MARLAR, Appellant, v. J. H. PATTER-SON, E. J. GOTTHELF, CHARLES S. SMITH, CHARLES C. BRADBURY, and WILLIAM G. SCHULTZ, Individually and as Pretended Members and Officers of BOARD OF MEDICAL EXAMINERS of the State of Arizona; BOARD OF MEDICAL EXAMINERS of the State of Arizona; RICHARD F. HARLESS, as County Attorney of Maricopa County, Arizona; and JOSEPH W. CONWAY, as Attorney General of the State of Arizona, Appellees.

· Messrs. Cox & Cox and Mr. Jacob Morgan, for Appellant.

Mr. Joe Conway, Attorney General and Mr. Edward P. Cline, Assistant Attorney General, for Appellees.

McALISTER, C. J.—William Marlar filed a complaint against J. H. Patterson, E. J. Gotthelf, Charles S. Smith, Charles C. Bradbury and William G. Schultz, members of the Board of Medical Examiners of the State of Arizona, praying for a declaratory judgment decreeing that he has the right to continue to engage in the practice of the healing arts, in Arizona, and from an adverse judgment he has brought the matter here for review. The parties will be referred to as they were in the superior court.

The facts upon which the action is based are substantially these: In 1938 and 1939, the plaintiff applied to the Board of Medical Examiners to take an examination for a certificate to practice medicine in the State of Arizona. The application was not accompanied by a diploma issued by a regularly chartered school of medicine, nor was one later presented, and the board, believing that this was necessary under section 67–1103,

Arizona Code 1939, declined to permit him to take the examination. Thereupon plaintiff filed an action in the Superior Court of Maricopa County alleging, among other things, that he had been licensed to practice medicine and surgery by the Territorial Medical Board in 1907, and was practicing thereunder when Arizona became a state in 1912, and that he was entitled to continue to practice medicine and surgery thereunder; that in addition to this he registered under the Basic Science Law, without examination, and received a certificate of registration in 1936, from the Arizona State Board of Examiners in the Basic Sciences under chapter 9, session laws of the first special session of 1936. He prayed for a judgment declaring, first, that under article 22, state constitution and the Basic Science Law he had the right to continue to engage in the practice of the healing arts; second, that it be decreed that the Basic Science Act of 1936, repeals and supersedes the Medical Practice Act and all amendments thereto; third, that if the Medical Practice Act be declared an existing statute, he be decreed to be entitled to continue in the practice of the healing arts, and that defendants be directed to issue him a license, certificate or permit to continue such practice under the Medical Practice Act upon his paying the regular license fee therefor, or a renewal thereof, without examination.

The case was heard before a jury and at the trial the plaintiff, Dr. Marlar, testified that he came to Phoenix in 1900, after graduating that year from high school at Mulberry, Arkansas; that in 1901, 1902, and 1903, he studied medicine under Dr. J. W. Foss and Dr. Evans in Phoenix; that in 1907, he took an examination before the Arizona Territorial Medical Board, composed of Dr. Manning, Dr. Foss and Dr. Hawley, passed it, and received a certificate to practice medicine and surgery; that he did not present to the board at that time a diploma from a regularly chartered school of

medicine because he did not have one; that the license issued to him at that time, by Territorial Medical Board, was sent, in 1932, to the Kansas City College of Osteopathy and Surgery, where he expected to matriculate, and was destroyed by fire; that he applied for an examination instead of a duplicate certificate because he thought the laws were changed in 1935, and he wanted a certificate so that he might enter other schools and further advance his knowledge as to how to take care of the sick; that an examination by him in open court of the register containing the names of all persons to whom medical licenses had been issued in Arizona since 1903, did not show his name as one of the licensees, but that during 1912 and 1913, while acting as inspector for the Medical Board of Arizona, he did see a record of a license issued in his name and that, notwithstanding the absence of his name from the great register, he did receive one from the Territorial Board in 1907, which was signed by Dr. Hawley, Dr. Foss and Dr. Manning, none of whom is now living.

At the close of the evidence, the court granted a motion by defendants for a directed verdict in their favor and in the judgment entered thereon further ordered and decreed, by way of declaratory judgment, first, that the Basic Science Act does not repeal and supersede the Medical Practice Act and that the latter and its amendments are valid legislation; second, that the plaintiff, William Marlar, is not entitled to a certificate from the Medical Board of the State of Arizona as the same is established under section 67–1101, Arizona Code 1939, licensing and entitling him to practice medicine and surgery in the State of Arizona; and third, that the said Medical Board has rightfully and lawfully rejected and refused to consider all applications made to it by the plaintiff, William Marlar, for leave to take an examination for the purpose of securing a certificate or license to practice medicine and surgery within the State of Arizona.

The plaintiff thereafter filed a motion asking that the verdict and judgment entered thereon be set aside and that judgment be entered in his favor. This motion, together with that for a new trial, was denied, and the plaintiff has appealed.

He has assigned a large number of errors, but it would serve no useful purpose to consider each of these since two or three of the propositions advanced are determinative of the question involved. The first is whether plaintiff was entitled to have issued to him by defendants a license to practice medicine and surgery by virtue of the fact that he had been licensed in 1907, to practice under the provisions of Number 59, Session Laws of 1903, or by the further fact that he had registered under the Basic Science Act of 1936. If he was rightfully issued a certificate in 1907, and it was in effect when Arizona became a state, there could be no question but that his right to continue to practice after statehood was preserved by article 22 of the state constitution. The important query is, does the evidence establish that he was admitted in 1907? His testimony on that subject is that he was granted a certificate to practice at that time after passing an examination given by the board of medical examiners and the further statement by him that he saw a record of a license issued in his name in 1912 or 1913, while acting as an inspector for the medical board. This last statement was made following the admission by him that he did not find his name among the licensees appearing on the great register of Arizona physicians, kept by the medical board, and containing the names of those granted certificates since 1903. He was unable to produce a medical license or any record of an examination given him by the medical board in 1907, and he testified that he did not have, at that time, a diploma from a medical college.

Number 59, Session Laws of 1903, which was the law governing the admission of physicians to practice medicine and surgery in 1907, and pursuant to which plaintiff claims to have been issued a certificate, provides, among other things, as follows:

"Section 2. No person shall receive a license to practice medicine within the Territory unless he or she shall have:

"First. Obtained a diploma to practice medicine or some department thereof regularly issued by a medical college, lawfully organized under the laws of the State or Territory wherein such college shall have been located at the time of the issuance of such diploma;

.　　.　　.　　.　　.　　.　　.　　.　　.

"Section 4. Any person desiring to obtain a license to practice medicine within this Territory shall make application therefor to the Board of Medical Examiners of Arizona. The application shall be in writing and state the name of the applicant, his age, his residence, the name and location of the college whence his diploma issued, . . .

.　　.　　.　　.　　.　　.　　.　　.　　.

"Section 9. The Secretary of the Board shall keep a register of those to whom license to practice shall be issued under the provisions of this Act. Such record shall be kept in a substantially bound book in which shall be entered in alphabetical order the name of the licensees, their place of residence, the date of issuance of license and such other memoranda as the Board may direct. . . . "

It is very clear from these provisions that the policy of the law then was that no one who had not obtained a diploma to practice medicine, issued by a medical college lawfully organized under the laws of the state wherein it was located at the time, should receive a license to practice medicine in Arizona, and such has been the law from then until now, except that in 1913, there was added the provision that the requirements of such medical school "shall have been, at the time of granting such diploma, in no particular less than

those prescribed by the Association of American Medical Colleges for that year". Paragraph 4739 Revised Statutes 1913 (Civ. Code). And this has remained the law through the years, Section 2556, Revised Code 1928, and still is. Section 67–1103, Arizona Code 1939.

█ The admission by plaintiff that he had no diploma in 1907, is determinative of the question as to the license issued to him at that time, unless it be presumed that the board of examiners violated the law. And if this was done, the fact still remains that the certificate was unlawfully issued. Plaintiff might have been permitted, as an act of kindness, to take the examination to test his knowledge of medicine, but no matter how well informed he showed himself to be, he could not lawfully have been licensed unless he had a diploma from a medical college.

██ Neither does the fact that plaintiff registered under chapter 9, Session Laws, first special session of the 12th legislature, commonly referred to as the Basic Science Act, entitle him to a certificate to practice medicine and surgery. This act is nothing more than a requirement that all persons who wish to practice the healing arts in this state must first establish, to the satisfaction of an impartial board of examiners, that they possess at least a rudimentary knowledge of the basic sciences, namely, gross anatomy, physiology, pathology, chemistry, bacteriology and hygiene, and the examining board is composed of faculty members of the state university chosen by the board of regents without regard to the school of healing to which they subscribe. At least two of the subjects (physiology and hygiene) required are taught in grammar school and one (chemistry) in high school and the act itself provides in section 19:

"No provision of this Act shall be construed as repealing any statutory provisions in force at the time of its passage with reference to the requirements gov-

erning the issuance of licenses to practice the healing art of any branch thereof, except as herein provided.''

 The Medical Practice Act was amended in 1935, chapter 99, session laws of that year, and we are unable to see why the plaintiff claims that they made the board of examiners merely a board of registration. The first change made deals with the make-up of the board and the length of term each shall serve, and the second made the practice of medicine without having a valid recorded certificate a felony instead of a misdemeanor. Then there was added a section providing that every person practicing medicine, surgery or osteopathy in the state shall renew his license each year by the payment of $3 on or before January 1st. Clearly these amendments had no effect whatever on the other provisions of the Medical Practice Act.

The judgment of the superior court was correct and is, therefore, affirmed.

ROSS and STANFORD, JJ., concur.